# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| WHITE GLOVE STAFFING, INC., | § | |
| AND CAROLYN CLAY, Individually, | § | |
| and on Behalf of a Class of Similarly | § | |
| Situated Individuals, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 3:17-CV-01158-K |
| METHODIST HOSPITALS OF | § | |
| DALLAS, AND DALLAS METHODIST | § | |
| HOSPITALS FOUNDATION, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS AND THE PLAINTIFF CLASS'
## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

MATTHEW R. SCOTT
Texas Bar No. 00794613
matt.scott@cottperezlaw.com
JAVIER PEREZ
Texas Bar No. 24083650
javier.perez@scottperezlaw.com
**SCOTT | PEREZ LLP**
Founders Square
900 Jackson Street, Suite 550
Dallas, Texas 75202
214-965-9675 / 214-965-9680 (Facsimile)

**AND**

ROYCE B. WEST
Texas Bar No. 21206800
royce.w@westllp.com
VERETTA L. FRAZIER
Texas Bar No. 00793264
veretta.f@westllp.com
**WEST & ASSOCIATES, LLP**
320 S.R.L. Thornton Freeway, Suite 300
Dallas, Texas 75203
214-941-1881 / 214-364-7138 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

I.     Introduction ................................................................................................................1

II.    Statement of Facts ......................................................................................................2

III.   Relevant Standards .....................................................................................................4

       A.    12(b)(1) and 12(b)(6) Standards ...................................................................4

       B.    Article III and Title VII Standing .................................................................4

IV.    Argument ....................................................................................................................5

       A.    White Glove Has Standing Under Title VII ..................................................5

       B.    White Glove Has Standing Under the TCHRA .............................................9

       C.    Section 1981 Does Not Require Minority Status ...........................................9

       D.    Plaintiffs Exhausted Administrative Remedies ...........................................13

       E.    There is a Sufficient Factual Basis for the Class Claims ............................14

V.     Conclusion ...............................................................................................................14

VI.    Prayer .......................................................................................................................14

## TABLE OF AUTHORITIES
### Federal Cases

*Alizadeh v. Safeway Stores, Inc.,*
    802 F.2d 111 (5th Cir. 1986) ................................................................................11

*Anjelino v. New York Times,*
    200 F.3d 73 (3d Cir.1999)....................................................................................13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................4

*Blanks v. Lockheed Martin Corp.,*
    568 F. Supp. 2d 740 (S.D. Miss. 2007)................................................................11

*City of Richmond v. J.A. Croson Co.,*
    488 U.S. 469 (1989).............................................................................................12

*Clayton v. White Hall Sch. Dist.,*
    875 F.2d 676 (8th Cir.1989) ......................................................................... 7, 13

*Cook v. Billington,*
    541 F. Supp. 2d 358 (D.D.C. 2008) .....................................................................6

*Cuvillier v. Taylor,*
    503 F.3d 397 (5th Cir. 2007) ...............................................................................4

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,*
    156 F.3d 581 (5th Cir. 1998),
    *reh'g en banc granted, opinion vacated sub nom.*
    *Williams v. Wal-Mart Stores, Inc.,* 169 F.3d 215 (5th Cir. 1999)
    and *opinion reinstated on reh'g sub nom.*
    *Williams v. Wal-Mart Stores, Inc.,* 182 F.3d 333 (5th Cir. 1999)................................10, 11

*Des Vergnes v. Seekonk Water Dist.,*
    601 F.2d 9 (1st Cir. 1979)....................................................................................10

*EEOC v. Bailey Co., Inc.,*
    563 F.2d 439 (6th Cir. 1977) ...............................................................................7

*EEOC v. Miss. Coll.,*
    626 F.2d 477 (5th Cir. 1980) ...............................................................................7

*EEOC v. PBM Graphics Inc.,*
    877 F. Supp. 2d 334 (M.D.N.C. 2012) ...........................................................7, 8

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.,*
    28 F.3d 1268 (D.C. Cir. 1994) ...........................................................................................6

*Gersman v. Group Health Ass'n, Inc.,*
    931 F.2d 1565 (D.C. Cir. 1991),
    vacated on other grounds,
    502 U.S. 1068 (1992) (emphasis added) ...........................................................................13

*Hudson Valley Freedom Theater, Inc. v. Heimbach,*
    671 F.2d 702 (2d Cir.1982) ...............................................................................................12

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .............................................................................................................5

*Mercado Azteca, L.L.C. v. City of Dallas, Tex.,*
    2004 WL 2058791 (N.D. Tex. Sept. 14, 2004) .................................................................13

*Palmore v. City of Pac.,*
    851 F. Supp. 2d 1162 (E.D. Mo. 2010) ...............................................................................4

*Rosenblatt v. United Way of Greater Houston,*
    607 F.3d 413 (5th Cir. 2010) ...............................................................................................4

*Stewart v. Hannon,*
    675 F.2d 846 (7th Cir. 1982) (same) ....................................................................................7

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,*
    368 F.3d 1053 (9th Cir. 2004) .....................................................................................12, 13

*Thompson v. N. Am. Stainless, LP,*
    562 U.S. 170 (2011) .........................................................................................................5, 7

*Warth v. Seldin,*
    422 U.S. 490 (1975) .............................................................................................................4

*Waters v. Hublein, Inc.,*
    547 F.2d 466 (9th Cir.1976) ................................................................................................7

*Young v. Covington & Burling LLP,*
    740 F. Supp. 2d 17 (D.D.C. 2010) ......................................................................................6

## Federal Rules and Statutes

42 U.S.C. § 2000e-5(b) ...............................................................................................................6

42 U.S.C. § 2000e-5(f) ................................................................................................................6

iii

## State Cases

*Molovinsky v. Fair Emp't Council of Greater Wash., Inc.,*
    683 A.2d 142 (D.C. 1996) ..................................................................................................6

## State Rules and Statutes

TEX. LAB. CODE § 21.001..................................................................................................9

TEX. LAB. CODE § 21.201 .................................................................................................9

TEX. LAB. CODE § 21.251 .................................................................................................9

iv

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| WHITE GLOVE STAFFING, INC., | § | |
| AND CAROLYN CLAY, Individually, | § | |
| and on Behalf of a Class of Similarly | § | |
| Situated Individuals, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL ACTION NO.** |
| v. | § | |
| | § | **3:17-CV-01158-K** |
| METHODIST HOSPITALS OF | § | |
| DALLAS, AND DALLAS METHODIST | § | |
| HOSPITALS FOUNDATION, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS AND THE PLAINTIFF CLASS'
RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**I.**

**INTRODUCTION**

Citing virtually no case law in support, Defendants have moved to dismiss all Plaintiffs' claims for failing to state claims upon which relief can be granted. As discussed more fully below, Defendants' Motion should be denied because (a) White Glove has standing to assert Title VII claims, (b) White Glove has standing to assert TCHRA claims, (c) § 1981 does not require a plaintiff to be a racial minority, (d) both Plaintiffs exhausted their administrative remedies, and (e) Plaintiffs' First Amended Complaint remedies the issues Defendants raised as to the sufficiency of the proposed class action claims. Defendants' Motion is without merit and should be denied.

**II.**

**STATEMENT OF FACTS**

White Glove is a staffing agency.[1]  White Glove entered into contractual negotiations with Defendants to provide banquet servers, prep cooks, dishwashers, and set-up crews for Defendants. During initial discussions, Jeff Jennings, Defendants' Food & Beverage Director, told White Glove employees Michael and Shawn White, and Pedro Gutierrez, that "[the Head] Chef prefers Hispanic employees."

Before the parties signed a contract, Defendants asked White Glove to supply a prep cook employee.  The only available employee White Glove could supply was Plaintiff Carolyn Clay, who is African American.  Clay worked at Methodist on or about May 20 and 21, 2016.  Clay was sent back to work at Methodist again on or about May 23, 2016.

On or about that same day, Jeff Jennings called and told Shawn White that Clay "was probably not going to work out," or words to similar effect, because "Chef prefers Hispanics," or words to similar effect.  Jennings asked if White Glove could send someone different.  Shawn White told Jennings he would see what he could do.

However, White Glove sent Clay back to Methodist on or about May 24, 2016, because she was the only employee they could supply on short notice.  Around 8 a.m., the Head Chef told the Second Chef to tell Clay he did not need her.  Jennings then spoke by phone with White Glove owner Linda White, and told her "Chef is angry," or words to similar effect, because White Glove sent Clay back to work at Methodist.

When asked if Clay had done anything wrong, Jennings could not articulate anything. Jennings told Linda White that "Chef prefers Hispanics, they just work out better," or words to

---

[1] The facts are taken directly from Plaintiffs and the Plaintiff Class' First Amended Complaint.

---

**Plaintiffs and the Plaintiff Class' Response to Defendants' Motion to Dismiss**               **Page 2**

similar effect.  Jennings said without Chef being on board, Defendants could not go forward with any contracts with White Glove.

Linda White asked Jennings, "So you only want Hispanics?" and Lawson replied "Yes, we only want Hispanics."  White said to Jennings, "That's hard to say out loud, isn't it?"  Jennings finally replied, "Yeah, but that's the way Chef wants it, and so does our boss," or words to similar effect.  Several hours later Jennings called Linda White and told her that Defendants were not going to enter into any contracts with White Glove and that they had chosen another provider.

White Glove routinely employs African American employees, and would have provided African American employees to work for Defendants had Defendants not engaged in unlawful race and color discrimination.  White Glove expected to provide anywhere from 40 to 75 employees to Defendants over the course of two years had their contract negotiations finished, which was not speculative given that Defendants had already started using White Glove to supply employees.

The sole reason Defendants did not enter into contracts with White Glove to have White Glove provide banquet servers, prep cooks, dishwashers, and set-up crews for Defendants was because of Defendants' refusal to allow White Glove to send African American employees to work for Defendants, as Defendants' Hispanic chef mandated.

## III.

## RELEVANT STANDARDS

### A.    12(b)(1) and 12(b)(6) Standards

Defendants' Motion is filed under Federal Rule of Civil Procedure 12(b)(6), which provides a vehicle "to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."[2]  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[3]  "In considering whether dismissal was appropriate, [the Court] must accept as true all well-pleaded facts."[4]

### B.    Article III and Title VII Standing

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."[5]  Thus, in this case, the two elements of standing are Article III standing and Title VII standing.

> For article III standing, the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third,

---

[2] *Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1166 (E.D. Mo. 2010) (quotation omitted).

[3] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

[4] *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 417 (5th Cir. 2010).

[5] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[6]

As it relates to Title VII standing, the Supreme Court announced the following test:

The Administrative Procedure Act authorizes suit to challenge a federal agency by any person . . . adversely affected or aggrieved . . . within the meaning of a relevant statute. We have held that this language establishes a regime under which a plaintiff may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint. We have described the zone of interests test as denying a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. We hold that the term 'aggrieved' in Title VII incorporates this test, enabling suit by any plaintiff with an interest arguably [sought] to be protected by the statute while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII.[7]

## IV.

## <u>ARGUMENT</u>

### A.   White Glove Has Standing Under Title VII

Defendants contend White Glove has no standing to assert a Title VII claim because it is not an individual who can be discriminated against.[8] With the above-standards in mind, it is clear Defendants' contention is incorrect. White Glove has Article III standing. White Glove suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual. Second, there is a causal connection between White Glove's injury and the conduct complained of—White Glove's injury is fairly traceable to Defendants' stated preference for Hispanic employees only, and not the result of the independent action of some third

---

[6] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations, quotations, and footnote omitted).

[7] *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177–78 (2011) (quotations and citations omitted).

[8] Def.s' Mot. at 2.

---

party not before the Court.  Third, White Glove's injury can be redressed by a favorable decision

from this Court.

As for Title VII standing, again, it is clear White Glove has Title VII standing.  Title VII

applies far more broadly than Defendants would have this Court believe.  Title VII provides, in

relevant part:

> **(f)  Civil action by Commission, Attorney General, or person aggrieved . . . .**
>
> (1)  . . . .   If a charge filed with the Commission pursuant to subsection (b) of this
> section is dismissed by the Commission, or if within one hundred and eighty days
> from the filing of such charge or the expiration of any period of reference under
> subsection (c) or (d) of this section, whichever is later, the Commission has not
> filed a civil action under this section . . . or the Commission has not entered into a
> conciliation agreement to which the person aggrieved is a part, . . . shall so notify
> the person aggrieved and within ninety days after the giving of such notice **a civil
> action may be brought against the respondent named in the charge (A) by the
> person claiming to be aggrieved** . . . . [9]

Thus, "Congress specifically permitted any 'person claiming to be aggrieved' by an unlawful

employment practice to file suit . . . .  This language, we have held, opens the courts to 'anyone

who satisfies the constitutional requirements.'"[10]   The District of Columbia Circuit has thus

repeatedly held that a fair employment counsel had both Article III standing and statutory authority

under Title VII to bring suit against a company that discriminated against its testers who sought

but were denied employment.[11]  What is more, every circuit to have addressed the issue—including

---

[9] 42 U.S.C. § 2000e-5(f) (emphasis added); *see also* 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed by or on
behalf of a person claiming to be aggrieved . . . alleging that an employer . . . engaged in an unlawful employment
practice . . . .").

[10] *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1279 (D.C. Cir. 1994).

[11] *Id.*; *see also Molovinsky v. Fair Emp't Council of Greater Wash., Inc.*, 683 A.2d 142, 146 (D.C. 1996) (allowing
employment council to proceed under District of Columbia statute with language analogous to Title VII's "[a]ny
person claiming to be aggrieved" language); *Young v. Covington & Burling LLP*, 740 F. Supp. 2d 17, 20 (D.D.C.
2010) (Title VII's "sweeping language opens the courts to anyone who satisfies the constitutional requirements.")
(quotations omitted)); *Cook v. Billington*, 541 F. Supp. 2d 358, 363 (D.D.C. 2008) (organization may have standing
to bring a claim under Title VII if the violation of an individual's rights causes injury to an organization).

---

**Plaintiffs and the Plaintiff Class' Response to Defendants' Motion to Dismiss**                    **Page 6**

the Fifth Circuit—has held that persons injured by discrimination against others have standing to assert claims under Title VII,[12] provided they have "an interest arguably [sought] to be protected by the statute . . . ."[13]

Here, White Glove's claims clearly fall within the "zone of interests sought to be protected by the statutory provision" at issue.[14] White Glove's claims and damages are clearly of the type Title VII seeks to eliminate and remedy—race discrimination in employment. Indeed, White Glove's claims and damages exceed those of an employee deprived of the ability to work in a diverse working environment (which the courts have held have standing to sue for Title VII violations)—White Glove's damages extend into the right to employ persons of diversity (in particular, African Americans). In fact, one closely analogous case shows why Defendants' Motion should be denied.

In *EEOC v. PBM Graphics Inc.*,[15] the EEOC learned that PBM told the staffing agency it preferred Hispanic temporary workers.[16] Although PBM's staffing agency sent both Hispanic and non-Hispanic workers for PBM's consideration, PBM disproportionately rejected non-Hispanic

---

[12] *Waters v. Hublein, Inc.*, 547 F.2d 466, 469 (9th Cir.1976) (holding that a white employee has standing to assert claims for discrimination against African- and Hispanic–Americans); *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 452–454 (6th Cir. 1977) ("'[A] person claiming to be aggrieved' under Title VII includes a white person, such as Mrs. Wade in the present case, who may have suffered from the loss of benefits from the lack of association with racial minorities at work."); *EEOC v. Miss. College*, 626 F.2d 477, 481–483 (5th Cir. 1980) ("We conclude that § 706 of Title VII permits Summers to file a charge asserting that Mississippi College discriminates against blacks on the basis of race in recruitment and hiring. Our decision today does not allow Summers to assert the rights of others. We hold no more than that, provided she meets the standing requirements imposed by Article III, Summers may charge a violation of her own personal right to work in an environment unaffected by racial discrimination.") (footnote omitted); *Stewart v. Hannon*, 675 F.2d 846, 848–850 (7th Cir. 1982) (same); *Clayton v. White Hall School Dist.*, 875 F.2d 676, 679 (8th Cir. 1989) (same).

[13] *Thompson*, 562 U.S. at 177–78 (quotations and citations omitted).

[14] *Id.* (quotations and citations omitted).

[15] *EEOC v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 341 (M.D.N.C. 2012).

[16] *Id*.

---

**Plaintiffs and the Plaintiff Class' Response to Defendants' Motion to Dismiss**          **Page 7**

workers while Hispanic temporary workers who were equally or less qualified were allowed to work.[17]  The EEOC alleged this practice resulted in PBM's core group of temporary workers being disproportionately composed of Hispanic workers and in PBM providing fewer hours to its non-Hispanic temporary workers.[18]  The EEOC brought suit alleging PBM intentionally engaged in a pattern or practice of employment discrimination against similarly qualified non-Hispanic temporary workers based on their national origin by (1) predominantly placing or assigning Hispanic temporary workers to its core group of temporary workers and (2) by assigning fewer work hours to its non-Hispanic temporary workers.[19]

PBM moved to dismiss the EEOC's claims contending, as Defendants do here, that the EEOC could not state a prima facie case of race discrimination and because the EEOC's complaint did not identify any person allegedly discriminated against, did not allege any facts showing that the workers who were supposedly discriminated against were equally or more qualified than the unidentified Hispanic workers favored by PBM, and did not provide a factual basis to support its claim that national origin was the motivating factor in PBM's decision to assign certain Hispanic workers to its core group of temporary employees.[20]  Yet the district court denied PBM's motion to dismiss, finding the EEOC had more than adequately stated claims under Title VII.

Here, White Glove has provided far more relevant allegations of wrongdoing and direct injury than did the EEOC in *PBM Graphics*.  White Glove has alleged direct evidence of discrimination, including sworn testimony from multiple sources that Defendants specifically told

---

[17] *PBM Graphics*, 877 F. Supp. 2d at 341.

[18] *Id*.

[19] *Id*.

[20] *Id*.

White Glove they only wanted Hispanic employees sent to work for them.  What is more, White Glove can point to a specific employee harmed by this pattern and practice—Plaintiff Carolyn Clay—who Defendants rejected solely because she was not Hispanic.

White Glove has Article II and Title VII standing to assert claims under Title VII. Defendants' Motion to Dismiss White Glove's Title VII claims should be denied.

**B.      White Glove Has Standing Under the TCHRA**

Defendants contend White Glove lacks standing to assert a claim under the TCHRA because White Glove is not "an individual that had or sought an employment relationship with Defendants."[21]  For the same reasons outlined above, White Glove has standing to assert claims under the TCHRA.  First, the TCHRA is specifically patterned on Title VII.[22]  Second, and most important, the operative language of Title VII and the TCHRA are the same:  both provide that a "person claiming to be aggrieved by" an unlawful employment practice may file a a charge or a civil action.[23]  For all the reasons set forth in section A, Defendants' Motion to Dismiss Plaintiffs' TCHRA claims should also be denied.

**C.      Section 1981 Does Not Require Minority Status**

Defendants contend "White Glove lacks standing to assert a claim pursuant to 42 U.S.C. § 1981 because White Glove is not a member of a racial minority" and thus cannot establish a prima facie case under § 1981.[24]  This contention is incorrect.  "Claims of racial discrimination brought

---

[21] Def.s' Mot. at 4.

[22] TEX. LAB. CODE § 21.001 ("The general purposes of this chapter are to: provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments . . . .").

[23] TEX. LAB. CODE § 21.201 ("A person claiming to be aggrieved by an unlawful employment practice . . .  may file a complaint with the commission."); TEX. LAB. CODE § 21.251 ("[C]omplainant may bring a civil action against the respondent.").

[24] Def.s' Mot. at 5.

under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."[25]  "Discrimination claims under Title VII and § 1981, based on circumstantial evidence, are subject to the well-established burden-shifting provided in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973)."[26]  To establish a prima facie case, a Title VII or § 1981 plaintiff must establish that he or she "(1) is a member of a protected class; (2) was qualified for the position; (3) was terminated; and (4) was replaced by someone outside the protected class."[27]

First, White Glove "has an implied Right of action against any other person who, with a racially discriminatory intent, interferes with [its] right to make contracts with non-whites."[28]  This right extends to providing a cause of action "against any other person who, with a racially discriminatory intent, injures him because he made contracts with non-whites."[29]  There is no requirement that White Glove be either a person or a member of a minority group, and Defendants have cited no such authority for either proposition.

Second, the Fifth Circuit has long recognized claims of associational discrimination under both Title VII and § 1981.  "In essence, the claim, as made by Deffenbaugh, is that she was discriminated against, as proscribed by the following language from Title VII, because of [her] race (white), as a result of her relationship with a black person.  In short, we agree with other courts

---

[25] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 587 (5th Cir. 1998), *reh'g en banc granted, opinion vacated sub nom. Williams v. Wal-Mart Stores, Inc.*, 169 F.3d 215 (5th Cir. 1999)and *opinion reinstated on reh'g sub nom. Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999).

[26] *Id*.

[27] *Id*.

[28] *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 14 (1st Cir. 1979).

[29] *Id*.

---

that have concluded that Title VII does proscribe such discrimination."[30]  "Title VII prohibits discrimination in employment premised on an interracial relationship. This is consistent with our § 1981 precedent concerning employment discrimination because of interracial marriages . . . ."[31]

While this is not an interracial marriage or dating case, there is no legal distinction that precludes White Glove from asserting § 1981 claims.  "Courts that have considered the issue have consistently held that Section 1981 (and Title VII) extend to claims of "association discrimination . . . though some courts have suggested that a friendship . . . is not a substantial enough relationship to support such a claim."[32]  What is more, this is not a mere friendship case—this is a case of blatant race discrimination that impeded White Glove's contractual rights.

White Glove alleges the sole reason Defendants refused to enter into contractual negotiations with White Glove was because White Glove employed African American employees, including Plaintiff Carolyn Clay.

> Whether a plaintiff has standing to recover for discrimination directed against persons in a protected class of which he is not a member largely depends on the nature of the harm he claims to have suffered.  Most courts will find standing where the plaintiff is able to point to a specific benefit or opportunity he has lost as a result of discrimination against others.[33]

"[T]he Supreme Court . . . implicitly recognized that corporations can have racial characteristics by allowing white owned corporations to challenge contractor set asides on reverse

---

[30] *Deffenbaugh-Williams*, 156 F.3d at 587 (quotation omitted).

[31] *Id.* at 589; *see also Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir. 1986) (section 1981 provides a cause of action to a white spouse who alleges that he was discriminated against in employment because of his marriage to a nonwhite).

[32] *Blanks v. Lockheed Martin Corp.*, 568 F. Supp. 2d 740, 745 (S.D. Miss. 2007).

[33] *Id*.

---

**Plaintiffs and the Plaintiff Class' Response to Defendants' Motion to Dismiss**                    **Page 11**

discrimination grounds."[34]   Along those lines, the Second Circuit has held that a corporation suing on its own behalf had standing to assert claims of racial discrimination in the disbursement of grant funds.[35]   In rejecting claims similar to those Defendants make here, the Second Circuit has also stated:

> We agree in finding it hard to believe that the Supreme Court would deny standing to the corporation because it has no racial identity and cannot be the direct target of the discrimination, while at the same time it would be obliged to deny standing to the stockholders on the sound ground that the injury was suffered by the corporation and not by them.[36]

"When a corporation has acquired a racial identity, either as a matter of law or by imputation, then it can be the direct target of discrimination and has standing to pursue a claim under § 1981."[37]

Here, White Glove's contractual relationships were impaired solely because White Glove refused to accede to Defendants' blatantly illegal and discriminatory policy of preferring Hispanic employees over African American employees.  White Gloves claims are parallel with the aims of the statute—to eliminate barriers to contractual rights of minorities by allowing those harmed by such discrimination to root it out in federal court.

---

[34] *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1058 (9th Cir. 2004) (citing *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469 (1989)).

[35] *Hudson Valley Freedom Theater, Inc. v. Heimbach,* 671 F.2d 702 (2d Cir.1982).

[36] *Id.* (quotation omitted).

[37] *Thinket*, 368 F.3d at 1059.

---

Furthermore, regardless of White Glove's racial composition though, it has standing to assert § 1981 claims against Defendants for their unlawful race discrimination:

> In our view, however, the determination whether a corporation has a racial identity is not determinative of whether that corporation has standing to bring a discrimination claim. Rather than assume that racial identity is a predicate to discriminatory harm, **we might better approach the problem by assuming that, if a corporation can suffer harm from discrimination, it has standing to litigate that harm**.[38]

"Thus, as an independent standing rationale, when a corporation experiences direct discrimination injury, it falls within the prudential zone of interest protected under § 1981."[39]

White Glove has standing to assert race discrimination claims against Defendants under § 1981.[40] Defendants' Motion to Dismiss White Glove's § 1981 claim should be denied.

### D.    Plaintiffs Exhausted Administrative Remedies

Defendants contend Plaintiffs failed to exhaust administrative remedies because they did not receive right to sue letters from the EEOC. This contention fails because Plaintiffs have remedied it—attached are the right to sue letters for both named Plaintiffs.

---

[38] *Gersman v. Group Health Ass'n, Inc.*, 931 F.2d 1565, 1568 (D.C. Cir. 1991), *vacated on other grounds*, 502 U.S. 1068 (1992) (emphasis added); *see also Mercado Azteca, L.L.C. v. City of Dallas, Tex.*, 2004 WL 2058791, at *6 (N.D. Tex. Sept. 14, 2004) (Boyle, J.) (citing *Gersman*).

[39] *Thinket*, 368 F.3d at 1060.

[40] *Clayton*, 875 F.2d at 676 (white employee of school district whose child had been allowed to attend school within district notwithstanding fact that employee lived outside district had standing to sue under Title VII based on district's alleged racially-motivated enforcement of residency policy against black employee to keep his child out of district's schools, which resulted in district also enforcing policy against the white plaintiff); *Anjelino v. New York Times*, 200 F.3d 73, 92 (3d Cir.1999) (holding that male plaintiffs had standing to sue for loss of employment and seniority on a priority list resulting from the defendant's discrimination against female co-workers, where male plaintiffs alleged that hiring for work shifts would stop just before the names of women on the priority list were reached, so that males listed below those names would also not be hired).

---

**E.      There is a Sufficient Factual Basis for the Class Claims**

Plaintiffs and the Plaintiff Class have amended their Complaint to more definitely state the basis of the class claims.  This amendment renders moot Defendants' Motion as it pertains to the class claims.

**V.**

**CONCLUSION**

Defendants' attempts to dismiss this case at the pleading stage fail.  White Glove has standing under both Title VII and the TCHRA to asserts the claims set forth in the First Amended Complaint.  Title VII's coverage is simply broader than Defendants would have this Court believe or hold.  The same is true for White Glove's § 1981 claims—White Glove has standing.

What is more, both White Glove and Clay have exhausted administrative remedies.  The attached right to sue letters demonstrate this.  And finally, White Glove and Clay's amended complaint addresses the alleged class pleading deficiencies raised in Defendants' Motion.

**VI.**

**PRAYER**

Plaintiffs and the Plaintiff Class respectfully request that the Court deny Defendants' Motion to Dismiss, and grant Plaintiffs and the Plaintiff Class all legal or equitable relief this Court deems proper.

Respectfully submitted,


 /s/ Matthew R. Scott
MATTHEW R. SCOTT
Texas Bar No. 00794613
matt.scott@cottperezlaw.com
JAVIER PEREZ
Texas Bar No. 24083650
javier.perez@scottperezlaw.com
**SCOTT | PEREZ LLP**
Founders Square
900 Jackson Street, Suite 550
Dallas, Texas 75202
214-965-9675 / 214-965-9680 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**


**AND**

ROYCE B. WEST
Texas Bar No. 21206800
royce.w@westllp.com
VERETTA L. FRAZIER
Texas Bar No. 00793264
veretta.f@westllp.com
**WEST & ASSOCIATES, LLP**
320 S.R.L. Thornton Freeway, Suite 300
Dallas, Texas 75203
214-941-1881 / 214-364-7138 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**

---

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served on all counsel of record via the Court's ECF system on June 15, 2017.


 /s/ Matthew R. Scott
MATTHEW R. SCOTT