IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WHITE GLOVE STAFFING, INC., and CAROLYN CLAY, Individually, and on Behalf of a Class of Similarly Situated Individuals, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:17-CV-1158-K |
| METHODIST HOSPITALS OF DALLAS, and DALLAS METHODIST HOSPITALS FOUNDATION, | § § § § § § § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss Claims in Plaintiffs' First Amended Class Action Complaint and Brief in Support (Doc. No. 18). Plaintiffs White Glove Staffing, Inc., and Carolyn Clay brought this employment discrimination and retaliation suit against Defendants Methodist Hospitals of Dallas and Dallas Methodist Hospitals Foundation. Methodist argues White Glove lacks standing to bring discrimination and retaliation claims under Title VII of the Civil Rights Act of

1

1964, discrimination and retaliation claims under Texas Commission on Human Rights Act (TCHRA), and a discrimination claim under 42 U.S.C. § 1981.

After carefully considering the motions, White Glove's response to Methodist's motion to dismiss, Methodist's reply to White Glove's response to the motion to dismiss, supporting briefs, and the applicable law, the Court **GRANTS** Defendants' Rule 12(b)(6) Motion to Dismiss Claims in Plaintiffs' First Amended Class Action Complaint and Brief in Support. Plaintiff White Glove's Title VII discrimination and retaliation claims, TCHRA discrimination and retaliation claims, and 42 U.S.C. § 1981 discrimination claim are dismissed.

I. Factual Background

White Glove, a staffing agency, began contract negotiations to provide servers, prep cooks, dishwashers, and set-up crews for Methodist. During these initial negotiations, Methodist allegedly informed White Glove that the head chef preferred Hispanic employees. Before entering a contract, Methodist asked White Glove to provide Methodist with a prep cook. White Glove sent Plaintiff Carolyn Clay. Clay is African American. Clay worked for Methodist

for only a few days before Methodist told White Glove that Clay was not working out and asked White Glove to send someone else. The next day, White Glove sent Clay back to Methodist because White Glove could not find another prep cook on short notice. Methodist asked Clay to leave. Methodist contacted White Glove and allegedly stated the head chef only wanted Hispanic employees. Later that day, Methodist ended contract negotiations and informed White Glove that it would not enter any contracts with White Glove.

## II. Legal Standard for 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows a defendant to challenge the plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. To withstand a 12(b)(6) motion to dismiss, the complaint must state the grounds upon which the plaintiff is entitled to relief such that the right to relief is not merely speculative but "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To meet this plausibility standard, the complaint must include sufficient facts to support the claim and not conclusory statements "devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 557). When

considering a motion to dismiss, the court must accept all facts alleged in the complaint as true and consider the complaint as a whole. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. Analysis of White Glove's Standing

Methodist contends White Glove does not have standing to bring the discrimination and retaliation claims under Title VII and TCHRA and the discrimination claim under 42 U.S.C. § 1981. Methodist argues White Glove did not have an employment relationship with Methodist and, therefore, does not have standing to bring Title VII claims and TCHRA claims. Methodist also argues White Glove, as a corporation, lacks the racial identity to have standing to bring a § 1981 discrimination claim.

### a. Because White Glove and Methodist Do Not Have an Employment Relationship, White Glove Lacks Standing to Bring the Title VII Claims.

An employer unlawfully discriminates against an individual under Title VII when the employer "fails or refuses to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

4

2(a). To allege a retaliation claim under Title VII, a plaintiff must show: "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

A plaintiff must not only have Article III standing to bring a Title VII claim but also Title VII standing. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177–78 (2011). A party has standing under Title VII when the injured person "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id*. In determining whether a plaintiff falls within this "zone of interests," courts examine the employment relationship between the parties. *Id*. Title VII claims "necessarily involve an employment relationship." *Diggs v. Harris Hosp.—Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988). To determine whether a plaintiff is an employee for Title VII purposes, courts apply the hybrid economic realities/common law control test. *Id*. This test considers "the economic realities of the work relationship," and the amount of control the principal has over how the work is performed as well as other factors. *Id*. at

272–73. Independent contractors lack the employee-employer relationship required by Title VII claims. *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986).

Here, White Glove is a corporation, not an individual. White Glove was not an employee of Methodist but was negotiating a staffing contract with Methodist. Before completing negotiations, White Glove provided a prep cook per Methodist's request. In providing the prep cook, White Glove acted as an independent contractor. The facts indicate White Glove and Methodist were negotiating a contract in which White Glove would act as an independent contractor. As an independent contractor, White Glove did not have an employment relationship with Methodist and, thus, lacks standing to bring Title VII discrimination and retaliation claims.

### b. Because White Glove and Methodist Did Not Have an Employment Relationship, White Glove Lacks Standing to Bring TCHRA Claims.

With similar wording to Title VII, TCHRA prohibits an employer from refusing to hire an individual or from discriminating against an individual in a manner that affects the individual's compensation or benefits based on the individual's race. TEX. LAB. CODE ANN. § 21.051. Under TCHRA, in both

discrimination and retaliation claims, a plaintiff must have or have sought an employment relationship with the defendant. *Capozzelli v. Allstate Ins. Co.*, No. 2:13-cv-00260-JRG, 2014 WL 786426, *2 (E.D. Tex. Feb. 25, 2014). The claims set out in TCHRA "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001(1). The Texas Supreme Court has stated courts should use federal statutes and cases addressing Title VII to interpret TCHRA. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). An independent contractor is not an employee under Title VII. *Broussard*, 789 F.2d at 1160. Because federal cases guide the interpretation of TCHRA claims, an independent contractor is not an employee under TCHRA.

As discussed above, White Glove and Methodist did not have an employment relationship sufficient to give White Glove standing to bring these claims. Because Title VII guides the Court's interpretation of TCHRA claims, the same reasoning finding White Glove lacks Title VII standing applies to the TCHRA claims. White Glove was negotiating a contract to provide staffing services as an independent contractor to Methodist. Thus, White Glove's relationship with Methodist was not an employee-employer relationship, rather

an independent contractor relationship. Because White Glove did not have an employment relationship with Methodist, White Glove does not have standing to bring discrimination and retaliation claims under TCHRA.

### c. White Glove, a Corporation Without Racial Identity, Lacks Standing to Bring a 42 U.S.C. § 1981 Discrimination Claim.

Section 1981 protects an individual's right to make and enforce contracts free from discrimination. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273–74 (5th Cir. 1997). To successfully plead claims under § 1981, a plaintiff must "show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Id*. at 274.

The Supreme Court has stated "as a corporation, [the plaintiff] has no racial identity and cannot be the direct target of the [defendants'] alleged discrimination." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977). In certain instances some circuit courts have found entities have "acquired an imputed racial identity sufficient to take it out of the general observation about corporations made by Justice Powell in *Arlington Heights*." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053,

1059 (9th Cir. 2004). For example, a minority-owned corporation acquired an imputed racial identity by becoming certified as a corporation with a racial identity to receive certain federal contracts. *Id*. at 1059, 1055. The Fifth Circuit has not addressed imputed racial identity, and only one federal district court in Texas has considered imputed racial identity in reference to a 42 U.S.C. § 1983 claim. *See Mercado Azteca, L.L.C. v. City of Dallas* No. 3:03-CV-1145-B, 2004 WL 2058791 (N.D. Tex. Sept. 14, 2004).

White Glove is a corporation and so "cannot be the direct target of the [defendants'] alleged discrimination." *Vill. of Arlington Heights*, 429 U.S. at 263. Even assuming the Fifth Circuit would allow a company to acquire an imputed racial identity, White Glove has not provided any facts that indicate it has acquired a racial identity. Because White Glove is a corporation without a racial identity, White Glove has not shown it is a member of a racial minority. Thus, White Glove does not have standing to bring a discrimination claim under § 1981.

White Glove argues even if it cannot have standing as the direct target of discrimination, it should have standing derived from its non-Hispanic employees who would have filled the staffing positions for Methodist. White

9

Glove cites cases in which employers discriminated against employees based on their interracial marriages and relationships. *See Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir. 1986). However, White Glove cites no case to support the situation in which an employer brings a § 1981 discrimination claim based on its employment relationship with a minority employee.

The Second Circuit considered a hypothetical situation in which a city denied contracts to a construction company because it was owned solely by African-American shareholders. *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 706 (2d Cir. 1982). The appellate court found "it hard to believe that the Supreme Court would deny standing to the corporation because it 'has no racial identity and cannot be the target' of discrimination, while at the same time it would be obliged to deny standing to the shareholders on the ground that the injury was suffered by the corporation and not by them." *Id*. The court believed the company would have standing to assert discrimination claims when there was no other avenue for the shareholders to seek redress. *Id*.

Here, White Glove is distinguishable. Methodist allegedly discriminated against White Glove's employees, not shareholders. Clay and the other

employees do have standing to bring claims against Methodist and have done so. Because White Glove lacks standing to bring a direct discrimination claim and Clay has standing to bring a discrimination claim, White Glove lacks standing to bring a § 1981 discrimination claim.

IV. **Conclusion**

The Court **GRANTS** Defendants' Rule 12(b)(6) Motion to Dismiss Claims in Plaintiffs' First Amended Class Action Complaint and Brief in Support. The Court dismisses Plaintiff White Glove's Title VII discrimination and retaliation claims, Texas Commission on Human Rights Act discrimination and retaliation claims, and 42 U.S.C. § 1981 discrimination claim.

**SO ORDERED.**

Signed September 7th, 2017.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE