IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| WHITE GLOVE STAFFING, INC. | § | |
|---|---|---|
| and CAROLYN CLAY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-1158-K |
| | § | |
| METHODIST HOSPITALS OF | § | |
| DALLAS and DALLAS METHODIST | § | |
| HOSPITALS FOUNDATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. No. 52) (the "Motion"). The Court previously ruled on certain claims raised in the Motion (Doc. No. 69); however, the Court withheld ruling on Plaintiff White Glove Staffing, Inc.'s ("White Glove") 42 U.S.C. § 1981 retaliation claim. After careful consideration of the law and the summary-judgment evidence presented by the parties, the Court now **GRANTS** Defendants Methodist Hospitals of Dallas and Dallas Methodist Hospitals Foundation's (collectively, "Methodist") Motion as to White Glove's § 1981 retaliation claim.

The Court previously recited the relevant facts and procedural background for the Motion in its prior order. For purposes of this Order, the Court incorporates the Factual Background and Procedural Background in its prior order (Doc. No. 69).

1

## I. Legal Standard

Summary judgment is appropriate when the pleadings, affidavits, and other summary-judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing. *Id.* at 321–25; *Anderson*, 477 U.S. at 255–57. Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249–52; *Boudreaux*, 402 F.3d at 540. "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates

judgment in favor of the movant, summary judgment is appropriate." *Alton v. Texas A&M Univ.*, 168 F.3d 196 (5th Cir. 1999). If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

II. Analysis

"To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Willis v. Cleo Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). A plaintiff engages in "protected activity" when the plaintiff "opposes" an unlawful employment practice. *Thompson v. Somervell Cty., Tex.*, 432 F. App'x 338, 341 (5th Cir. 2011). The Supreme Court has defined "oppose" based upon its ordinary meaning: "[t]o resist or antagonize . . .; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009). "Though the Court rejected a definition of 'oppose' that requires the opposition to be 'active [and] consistent,' it is clear that opposition nonetheless must be purposive." *Thompson*, 432 F. App'x at 341. "[S]tanding pat" against discriminatory practices is an example of opposition under the Supreme Court's definition. *Crawford*, 555 U.S. at 277.

"Whether an employee's statement or action is protected 'opposition' is a fact-specific inquiry." *Yount v. S & A Rest. Corp.*, 226 F.3d 641, 2000 WL 1029010, at *3 (5th Cir. 2000) (unpublished table decision). The context and setting in which the purported "opposition" by the plaintiff occurs is relevant when making this fact-specific inquiry. *See E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 242–44 (5th Cir. 2016); *see also Quintana v. Fujifilm N. Am. Corp.*, 96 F. Supp. 3d 601, 619–20 (N.D. Tex. 2015) (Lindsay, J.) (examining the plaintiff–employee's conduct during his entire six years of employment before determining that the plaintiff did not oppose a discriminatory practice).

White Glove points to three statements as evidence of their opposition. The first and second statements are by Shawn White, the Vice President of Operations for White Glove. Both statements contain a reference to White Glove's employees being of various backgrounds. In his second statement, Shawn White also allegedly stated "that's kind of messed up" in response to a comment by Jeff Jennings ("Jennings"), Methodist's Catering Coordinator/Special Events, that Methodist's head chef preferred Hispanic employees. The third statement comes from Linda White, the owner of White Glove. In a different conversation, Jennings also made the comment to Linda White that Methodist's head chef preferred Hispanic employees. Linda White responded, "That's a little hard to say out loud sometimes, isn't it, Jeff?" Finally, White Glove contends that the act of sending Plaintiff Carolyn Clay ("Clay"), an African-American

4

employee, back to Methodist after Jennings' statements that Methodist's head chef preferred Hispanic employees is also evidence of White Glove's opposition.

White Glove argues that rather than analyze each statement and act independently, the Court must "look at the totality of the conduct." The Court agrees. The totality of White Glove's conduct illustrates that White Glove did *not* purposively oppose Methodist's discriminatory acts. *See Thompson*, 432 F. App'x at 341 ("[I]t is clear that opposition nonetheless must be purposive."). None of the alleged statements by Shawn White or Linda White, taken in context and in light of the setting in which they were made, demonstrate that White Glove opposed a discriminatory practice. *See Rite Way Serv., Inc.*, 819 F.3d at 242–44.

White Glove attempts to portray its statements and conduct in a vacuum, but the entire context and setting undermine such a portrayal. *See id.* Shawn White's first comment, that White Glove has "a lot of different employees," was allegedly in response to a comment by Jennings that Methodist's head chef preferred Hispanic employees. The Court first notes that the summary-judgment evidence cited by White Glove is not clear about whether Shawn White actually made this comment to Jennings. The cited summary-judgment evidence for this first comment does not definitively indicate that Shawn White told Jennings that White Glove has "a lot of different employees." Nevertheless, the Court finds that such a statement, by itself, does not on its face constitute purposive opposition to a discriminatory practice. *See Thompson*, 432 F. App'x at 341; *Quintana*, 96 F. Supp. 3d at 620 (holding that a

5

comment about a "lack of diversity" did not constitute opposition). Furthermore, the surrounding context of the statement proves that Shawn White did not intend to oppose a discriminatory practice. The summary-judgment evidence establishes that this comment was made to Jennings during their conversation about White Glove and Methodist finalizing a contract. This comment by Shawn White does not constitute purposive opposition either as an isolated comment or in light of the entire conversation about finalizing a contract *See Thompson*, 432 F. App'x at 341.

The second statement by Shawn White also fails to constitute purposive opposition. After Jennings stated that Methodist's head chef preferred Hispanic employees, Shawn White allegedly responded, "that's kind of messed up." But, almost in the same breath, Shawn White said that he would try to replace Clay with someone else. Shawn White and his brother did "tr[y] to find someone else" who was "specifically Hispanic" to replace Clay, but ultimately they were unable to do so on short notice. The context surrounding this second statement by Shawn White indicates that not only did Shawn White not purposively oppose a discriminatory practice, he actually attempted to find a Hispanic employee to replace Clay because of Jennings' statement.

The third statement, made by Linda White, also does not constitute purposive opposition when considered in the context of the entire conversation. Linda White had a telephone conversation with Jennings after Clay had been sent back to Methodist. In that conversation, Jennings told Linda White that the head chef preferred Hispanic

6

employees. In response, Linda White said, "That's a little hard to say out loud sometimes, isn't it, Jeff?" However, immediately before and after her single statement, Linda White asked Jennings if White Glove could rectify the situation with Methodist and if White Glove "could have another opportunity to sit down and make [the contract between White Glove and Methodist] happen." This single statement from Linda White came in the context of a phone conversation in which she was trying to salvage the negotiations between White Glove and Methodist. The Court finds this statement does not constitute purposive opposition to any discriminatory practice by Methodist.

Finally, White Glove contends it opposed a discriminatory practice by Methodist when it sent Clay back the day after Shawn White made his second statement to Jennings. The summary-judgment evidence belies this argument. As discussed above, Shawn White and his brother actually attempted to find someone other than Clay who would satisfy the head chef's preferences, but "because [Shawn White] didn't have a specifically Hispanic person to fulfill that spot the next morning at 5:00 A.M.," they sent Clay back to Methodist since she "had already been working out [at Methodist]." White Glove's own summary-judgment evidence shows that its purpose in providing Clay to Methodist the next day was not to oppose a discriminatory practice, but because White Glove had no other employee to provide. This action does not amount to purposive opposition.

The previous analysis establishes that the *immediate* context of Shawn White's and Linda White's statements negates any purported opposition by White Glove. The *broader* context behind all of the interactions between White Glove and Methodist also confirms this conclusion. In these interactions between White Glove and Jennings, White Glove sought to continue or revive contract negotiations with Methodist by either: (1) attempting to accommodate the request for Hispanic employees or (2) asking how White Glove could remedy the issue when Methodist backed out of contract negotiations. The totality of White Glove's conduct proves that White Glove never *intended* to *purposively* oppose Methodist's discriminatory conduct. *See Thompson*, 432 F. App'x at 341–42 (finding summary judgment appropriate when there was no intent by the plaintiff to oppose the discriminatory practices by the defendant). By attempting to accommodate Methodist's request for Hispanic employees, White Glove in no way "stood pat" against Methodist's discriminatory practices. *See Crawford*, 555 U.S. at 277. White Glove's three, offhand comments, even taken together with the act of sending Clay back to Methodist, do not rise to the level of opposition required for a § 1981 retaliation claim. *See Quintana*, 96 F. Supp. at 620 ("The court . . . agrees . . . that [plaintiff's] conversation with [his manager] regarding lack of diversity cannot be deemed protected activity 'because [plaintiff] did not oppose an unlawful discriminatory practice, but, rather, he allegedly merely commented that he noticed a lack of diversity in the sales force.'"). The Court finds that no reasonable jury could

find that White Glove intended to purposively oppose Methodist's discriminatory conduct.

White Glove has not met its burden to establish through competent summary-judgment evidence that a genuine issue of material fact exists regarding whether White Glove opposed a discriminatory practice.

   III.   **Conclusion**

Because White Glove does not present competent summary-judgment evidence to create a genuine issue of material fact about whether it opposed the alleged discriminatory practices by Methodist, Methodist is entitled to summary judgment as to White Glove's § 1981 retaliation claim. The Court **GRANTS** the Motion as to White Glove's § 1981 retaliation claim.

Signed October 23rd, 2018.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE